Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9626 | **DATE** | 5/23/2002 |
| **CASE TITLE** | Greer et al vs. Stulp et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 6/10/2002 at 9:45 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Stulp's motion (Doc 13-1) to dismiss Count I is granted. As the remaining counts are here on diversity, the oral dismissal order issued in open court dismissing the remaining counts is hereby vacated. Counsel are directed to appear at the June 10, 2002 status hearing at 9:45 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 2 4 2002 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | MAY 2 4 2002 date mailed notice |
| | | | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL GREER, THOMAS A. FLOYD, HERBERT A. VANCE, JR., THE ARTICLE 9 TRUST OF JOYCE M. HAMPTON, and THE ARTICLE 9 TRUST OF MELINDA SULLIVAN, ) ) ) ) ) ) | | |
| Plaintiffs, ) ) | | |
| vs. ) ) | 01 C 9626 | |
| PATTY STULP, ) ) ) | DOCKETED | |
| Defendant. ) | MAY 24 2002 | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on a motion to dismiss Count I of the amended complaint. For the reasons set forth below, the motion is granted.

### BACKGROUND

Plaintiffs Carl Greer ("Greer"), Thomas Floyd ("Floyd"), Herbert Vance, the Article 9 Trust of Joyce M. Hampton, and the Article 9 Trust of Melinda Sullivan (collectively referred to as "the shareholders") are investors in a closely held Colorado corporation called Ethanol Management Company ("EMC"). Defendant Patty Stulp ("Stulp") is the president of EMC as well as a shareholder. In late 1992 or early 1993, Stulp proposed the purchase of a company called E & R Trucking to Greer. The two

decided that either EMC would purchase the company or the shareholders collectively and Stulp individually would each purchase a 50% interest in the venture.

According to the shareholders, Stulp then proceeded to purchase the company herself and set up a venture called MAP Trucking. She supposedly used EMC funds to purchase and fund MAP, without obtaining shareholders' authorization to do so. In April 1993, Stulp informed Greer and Floyd of what she had done; Greer then requested that she transfer the 50% interest discussed when Stulp first brought up the purchase of E&R Trucking as well as certain financial data and other documentation of the transaction. In December 1993, without the shareholders' knowledge or consent, Stulp allegedly created a revolving line of credit agreement that enabled MAP to borrow as much as $540,000 from EMC. The shareholders contend that from that point on, Stulp continually sank EMC resources into MAP operations, ultimately running up a tab of $551,532. Throughout the intervening eight years, Stulp purportedly misrepresented the relationship between EMC and MAP in telephone conversations as well as mailing the shareholders incomplete and deceptive financial information. In May 2001, Stulp informed Greer that she did not intend to transfer 50% of her interest in MAP to the shareholders as was agreed in the first meeting the parties had regarding the acquisition. Finally, in July 2001, Floyd received a financial statement from Stulp that indicated the full extent of MAP's debt to EMC.

The shareholders filed suit that December against Stulp and EMC, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of contract, and common law fraud. The following February, they amended the complaint, dropping EMC as a defendant and adding a claim for breach of fiduciary duty. Stulp now moves to dismiss Count I, the RICO claim, pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. Triad Associates, Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must construe the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be accepted as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).

The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992). With these principles in mind, we turn to the instant motion.

## DISCUSSION

Count I is brought under 18 U.S.C. § 1962(c). A claim under this section of RICO must contain four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 105 S.Ct. 3275, 3285 (1985). Stulp takes issue with the sufficiency of the complaint as to only one of these elements: pattern. At bare minimum, a pattern of racketeering activity requires two predicate acts of racketeering within a ten-year period. 18 U.S.C. §§ 1961(5). The activities that can be considered predicate acts, listed in 18 U.S.C. § 1961(1), vary from mail fraud to murder. In this case, the shareholders have alleged commercial bribery and mail and wire fraud as predicate acts. Bribery is an activity listed among the predicate acts, 18 U.S.C. § 1961(1)(A), and acts of commercial bribery as defined by the Colorado statute can supply the foundation for a RICO claim. U.S. v. Gaudreau, 860 F.2d 357, 363 (10th Cir. 1988). However, the activities alleged within the complaint do not amount to bribery, commercial or otherwise. To commit commercial bribery under the Colorado statute, Stulp must have "accept[ed], or agree[d] to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity...." Colo. Rev. Stat. 18-5-401(1). The shareholders do not allege that someone gave Stulp something of value, which she then accepted in consideration for her actions. Instead, they characterize her behavior as "theft," "misappropriation," or "siphoning funds," all indicating unilateral action. See, e.g., Complaint, ¶¶ 20, 39;

Pl.'s Resp. at 4-6, 9. In other words, the shareholders seem to argue that Stulp accepted bribes from herself. Needless to say, this is not an adequate allegation. While we do not opine whether Stulp's activities were illegal in some form or fashion, one thing is certain: they were not connected with acts of commercial bribery.

The flaws in the allegations of bribery do not doom Count I; the shareholders have also alleged several predicate acts of mail and wire fraud. To properly shape these acts into the requisite pattern, the shareholders must establish that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Tel. Co., 109 S.Ct. 2893, 2900 (1989). The continuity prong can be satisfied by either open-ended or closed-ended activity. Vicom, Inc., v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 779 (7th Cir. 1993). The main difference between the two is the presence or absence of a natural endpoint for the unlawful scheme, but the factors relating to each differ as well. Id.; Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986).

Although continuity can be shown by either closed-ended or open-ended activity, the shareholders do not assert that Stulp's practices were a closed-ended activity. Rather, they argue that because Stulp "continues to use EMC to fund MAP and line her pockets with plaintiffs' money," she is conducting an open-ended activity. Pls.' Resp. at 7. Open-ended activity can be shown in three ways. Vicom, 20 F.3d at 782. The shareholders argue that its complaint fits two of the three possible scenarios.

First, they claim that the situation involves a specific threat of repeated criminal activity. Second, they assert that the predicate acts of mail and wire fraud constitute Stulp's regular way of conducting business. Id.

The instant complaint contains one allegation that hints at the threat of repeated misconduct: "Stulp's misappropriation of funds would continue indefinitely, but for the commencement of this action." Complaint, ¶ 42. However, "bald assertions" of continued racketeering activity are insufficient to show open-ended activity. Id. at 783. In addition, the complaint states that, in May 2001, Stulp informed the plaintiffs that she did not intend to effect the promised transfer of an interest in MAP, bringing whatever misrepresentations she may have made to a close. Moreover, in July 2001, five months before the shareholders filed suit, Stulp revealed to them the extent of MAP's financial obligations to EMC. In short, the facts in the complaint do not add up to a threat of indefinite continued wrongdoing. On the contrary, the shareholders have alleged that as of July 2001, Stulp had come clean and the fraud was at an end. The complaint's description of the endpoint of Stulp's purported scheme disallows any inference that Stulp would engage in continued criminal activity, assuming that her acts would rise to that level in the first place.

As for the second scenario, the shareholders argue that Stulp's acts evince a routine that amounts to a regular way of doing business. The acts to which the shareholders look are three mailings of financial statements over a three-year period

as well as telephone calls during which they claim Stulp made fraudulent statement about the MAP deal.[1] A simple accounting of the number of instances of mail and wire fraud is not determinative and can be merely happenstance. Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1278 (7th Cir. 1989). The complaint describes only a few isolated incidents spread out over a period of nine years of uninterrupted business operation, connected to a single aspect of EMC's business dealings. Even viewed in the light most favorable to the shareholders, this is not the kind of frequent behavior that would support an allegation of a habitual use of criminal activity within the operations of the enterprise. See Pizzo v. Bekin Van Lines, 258 F.3d 629, 633 (7th Cir. 2001). It is sporadic and therefore cannot be construed as a "way of doing business." Compare Olive Can Co., Inc. v. Martin, 906 F.2d 1147, 1152 (7th Cir. 1990) and Lipin v. Lee, 803 F.2d 322, 324 (7th Cir. 1986) with Liquid Air Corp. v. Rogers, 834 F.2d 1297, (7th Cir. 1987). In sum, the shareholders' description of the events in this dispute foreclose a conclusion that Stulp is engaging in open-ended racketeering activity, and the shareholders' argument to the contrary is unavailing.

---

[1] The exact number of calls is unclear because of the vague allegations of ¶ 40(c), which obliquely refers to repeated reassurances Stulp purportedly made to Floyd during telephone calls over a one-year period. Because this paragraph relates to a claim of wire fraud, it is subject to the particularity requirements of Fed. R. Civ. Proc. 9(b). To pass muster, it must give the "who, what, when, where, and how" of the events that form its foundation. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). An amorphous allusion to a body of telephone calls, which does not attempt to identify how many calls were involved or when they took place, does not supply a sufficient degree of detail to support an allegation of wire fraud.

In its essentials, the shareholders' RICO claim is based on the alleged usurpation of one business opportunity resulting in one injury to one set of victims. A single fraudulent objective, the claimed misappropriation of a business opportunity, even though supported by a series of similar and related acts, does not supply the requisite "pattern of racketeering activity." The complaint fails to satisfy the continuity element imputed to the statute. Count I therefore cannot withstand Stulp's 12(b)(6) challenge; it must be dismissed.

## CONCLUSION

Based on the foregoing analysis, Stulp's motion to dismiss Count I is granted.

_____
Charles P. Kocoras
United States District Judge


Dated: ____May 23, 2002____